# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **CHRISTOPHER WAYNE WEBB,** ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | **Case No. CIV 13-065-JHP-KEW** |
| ) | |
| **JOE ALLBAUGH, Department of** ) | |
| **Corrections Interim Director,** ) | |
| ) | |
| Respondent. ) | |

## OPINION AND ORDER

This matter is before the court on Petitioner's petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254. Petitioner, a pro se inmate currently incarcerated at Lawton Correctional Facility in Lawton, Oklahoma, attacks his conviction in Bryan County District Court Case No. CF-2009-386 for Conspiracy to Commit a Felony. He sets forth the following grounds for relief:

I. The trial / appellant [sic] court erred in failing to dismiss the charges against Mr. Webb as he was denied a speedy trial in violation of his 6th and 14th Amendment rights to the United States Constitution.

II. The evidence was insufficient to convict Mr. Webb as the accomplice testimony was insufficient / wasn't even corroborated, and the evidence, even if taken as true and sufficiently corroborated, did not establish a conspiracy to commit a felony.

The respondent concedes that Petitioner has exhausted his state court remedies for the purpose of federal habeas corpus review. The following records have been submitted to the court for consideration in this matter:

A. Petitioner's direct appeal brief.

B.  The State's brief and supplement in Petitioner's direct appeal.

C.  Summary Opinion affirming Petitioner's judgment and sentence. *Webb v. State*, No. 2011-905 (Okla. Crim. App. Jan. 29, 2013).

D.  State court record.

**Standard of Review**

Under the Anti-Terrorism and Effective Death Penalty Act, federal habeas corpus relief is proper only when the state court adjudication of a claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

**Facts**

Petitioner met Ashley Clowdus through a mutual friend. Ashley, who was 32 years old at the time of trial, is disabled and lived with her mother Patricia Clowdus. Patricia was the payee for Ashley's disability check. When Ashley needed money, Patricia gave her cash or took her shopping. (Tr. 105-108, 112-13, 133-35, 142-43).

On May 7, 2009, Petitioner took Ashley to First Convenience Bank located in a Walmart in Grapevine, Texas, and established a checking account in her name. Petitioner allowed her to use his address for the account, because he felt sorry for her. (Tr. 111-12, 138, 230-31).

About a week after the checking account was opened, Petitioner agreed to give Ashley

2

a ride to Durant, Oklahoma, where she thought her boyfriend was staying.[1]  On May 15, 2009, the two drove to Durant, where they stayed with Petitioner's cousin Shannon Billey, and Ms. Billey's boyfriend Salomon Pedroza.  (Tr. 137, 144, 150-51, 164-65).

On May 17, 2009, Nathan Callaway, a police officer for the Choctaw Nation, received a report that two people were passing hot checks at the Choctaw Travel Plaza gas station and convenience store in Durant.  When Officer Callaway arrived a the Travel Plaza parking lot, he saw a security guard detaining a Hispanic man, later identified as Salomon Pedraza, by the side of the building.  Pedraza was holding a small beagle.  The guard told Calloway that Pedraza was accompanied by a woman who was writing hot checks.  The woman, later identified as Ashley Clowdus, was in the corridor of the Travel Plaza with another security guard.  She was on the ground, rocking back and forth and mumbling, and she seemed nervous and paranoid.  At first Officer Callaway thought she was under the influence of drugs, but he then realized that her behavior was attributable to a mental condition.  (Tr. 88-89).

Officer Callaway attempted to communicate with Ashley, but she was difficult to understand.  He eventually understood that she needed her dog, so he took the beagle from Pedraza and gave it to her.  She calmed down and still was very difficult to understand, but she then pulled a medical alert card from her pocket.  The card stated that she suffered from tremors and instructed the reader to contact a physician or parent.  The card also had the phone number for Ashley's mother Patricia Clowdus.  (Tr. 90-91).

Officer Callaway called Patricia, who lived in South Lake, Texas.  Patricia said she

---

[1] The boyfriend actually was living in Okmulgee, Oklahoma, not Durant.  (Tr. 147).

did not know where Ashley was, and she was in the process of filing a missing person report. Officer Callaway asked Patricia whether Ashley had any checks, and Patricia replied that Ashley did not have a bank account or checks. Officer Callaway determined that Ashley was a victim and decided to release her to her mother. Patricia said it would take two hours to travel to Durant, so Callaway took Ashley to the casino hotel where a female security guard stayed with her until her mother could arrive. (Tr. 91-92).

Officer Callaway arrested Pedraza for using a mentally disabled person in a crime and for conspiracy. Pedraza denied any wrongdoing, stating that Ashley was the one who wrote the checks. When Callaway said that Pedraza could face a kidnaping charge, Pedraza yelled, "I didn't kidnap her, [Petitioner] did." Officer Callaway retrieved two bogus checks that were written at the Travel Plaza, along with a surveillance video. (Tr. 93, 99-100).

Petitioner was charged with Kidnaping, Financial Exploitation of a Mentally Disabled Person/Vulnerable Adult/Incapacitated Adult, and Conspiracy to Commit a Felony. He was only convicted of the Conspiracy charge.

**Ground I: Speedy Trial**

Petitioner alleges he was denied his right to a speedy trial, in violation of the Sixth and Fourteenth Amendments. The respondent asserts the decision by the Oklahoma Court of Criminal Appeals (OCCA) decision was not an unreasonable determination of federal law as determined by the United States Supreme Court, and the OCCA identified and applied the relevant federal standard for review of a speedy trial claim. The OCCA denied relief as follows:

> . . . [A]fter careful consideration, we find that Appellant was not deprived of his speedy trial rights. *Barker v. Wingo*, 407 U.S. 514, 530 (1972); *Lott v. State*, 98 P. 3d 318, 327 (2004). Although the length of the delay, 2

4

> years, 2 months and 5 days, is sufficient to necessitate review of the remaining *Barker* factors, balancing all considerations and relevant circumstances, we find that Appellant was not deprived of his speedy trial rights. *Ellis v. State*, 76 P.3d 1131, 1136. The 279 days of delay attributable to the State was neutral and reasonable. *Lott*, 98 P.3d at 328; *Ellis*, 76 P.3d at 1139. The 538 days of delay Appellant caused by seeking continuances and filing lawsuits in various courts and repeatedly seeking to remove defense counsel, the prosecuting attorney, and the assigned trial judge does not weigh against the State. *Fields v. State*, 648 P.2d 43, 44 (Okla. Crim. App. 1982); *see United States v. Loud Hawk*, 474 U.S. 302, 316-17 (1986) (refusing to weigh delay caused by the defendant); *see also Barker*, 407 U.S. at 529 ("We hardly need add that if delay is attributable to the defendant, then his waiver may be given effect under standard waiver doctrine . . . ."). Appellant's assertions of his right to a speedy trial were not sincere as he was deliberately seeking to delay the trial at the same time. *See Loud Hawk*, 474 U.S. at 314-15. Appellant has not shown that his defense was impaired. *Lott*, 98 P.3d 331-32. We find that Appellant suffered some prejudice as a result of the deprivation of his liberty, but the great majority of the delay was attributable to Appellant's deliberate attempts to delay the trial. *Lott*, 98 P.3d at 332. As such, we find that the factors of reason for the delay, the defendant's assertion of his right, and prejudice to the defendant all clearly weigh in favor of the State and against Appellant.

*Webb v. State*, No. F-2011-905, slip op. at 2-3 (Okla. Crim. App. Jan. 29, 2013).

There are four factors to be considered in the analysis of speedy trial claims: "Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Barker*, 407 U.S. at 530. The record shows that Petitioner was arrested on July 22, 2009, and his trial began 26 months later on September 27, 2011. Therefore, as determined by the OCCA, Petitioner satisfied the threshold *Barker* inquiry concerning the length of delay. *See Webb*, slip op. at 2.

As set forth by the OCCA, however, the second *Barker* factor weighs heavily against Petitioner, because most of the delay between his arrest and his trial was attributable to him. *Id*. Petitioner made repeated requests for continuance, filed lawsuits against people involved

5

in the case, and presented a last-minute effort to remove his attorney. The respondent has detailed the case history:

- Petitioner was arrested on July 22, 2009, and the next day the trial court set the case for an October 6, 2009, preliminary hearing. (O.R. 8).

- On August 27, 2009, the State filed a motion to continue the preliminary hearing, so Petitioner's cases could be grouped together, because the same witnesses were needed for more than one case. Petitioner's attorney agreed to reset the hearing to November 30, 2009, and it was held on that date. Petitioner was arraigned on December 15, 2009. (O.R. 20, 51).

- Petitioner waived his right to a jury trial in the January/February 2010 term, and the trial court set the case for March 22, 2010. On March 22, 2010, Petitioner announced he wanted a jury trial, and the judge set his trial for the April/May 2010 jury term. (O.R. 53, 62).

- On April 27, 2010, Petitioner requested a continuance and affirmed, "The defendant . . . understands he is waiving his right to a speedy trial for this term of court." The court reset the case for August 16, 2010. (O.R. 72, 96).

- On August 16, 2010, Petitioner requested a jury trial, and the case was reset for the September/October jury term. (O.R. 99).

- On September 16, 2010, Petitioner announced he intended to represent himself at trial, and he requested a continuance. The court granted the continuance, ordered defense counsel Larry Monard to serve as standby counsel, and offered Petitioner his choice of a new trial date during the September jury term, which ran through October 1, 2010, or during the January 2011 term. Petitioner chose the January term, and the case was reset for December 13, 2010. (O.R. 106; Tr. Sept. 16, 2010, at 20-25).

- On December 13, 2010, Petitioner's standby attorney requested to withdraw, because Petitioner had filed a civil lawsuit against him and the Oklahoma Indigent Defense System (OIDS) in the Oklahoma Supreme Court. The trial court granted the request, ordered OIDS to appoint replacement counsel, and reset the case for the January/February 2011 jury term. (O.R. 131-33).

- On January 11, 2011, in light of Petitioner's lawsuit against OIDS, OIDS requested the trial court to reconsider its order that OIDS provide standby

6

counsel, and the next day the trial court discharged OIDS because of the conflict. The court appointed Whitney Kerr to represent Petitioner. On January 14, 2011, Petitioner requested a continuance, and his trial was reset to April 25, 2011. (O.R. 143, 150-51, 153).

- On April 25, 2011, Petitioner filed a Motion for Continuance and (or) Demurrer due to conflicts from federal lawsuits he filed against the district attorney, prosecutor, and trial judge. (O.R. 181). The trial judge ordered the case stricken from the jury docket, sustained Petitioner's request, and recused himself from further proceedings. (O.R. 184, Tr. Apr. 25, 2011 Hearing at 3-4). The same day, Petitioner's new trial judge reset the case for September 26, 2011. (O.R. 184-85).

- On September 9, 2011, at Petitioner's request, Petitioner's defense attorney filed a motion to withdraw, which was denied on September 15, 2011. (O.R. 227, 233).

- On September 16, 2011, Petitioner filed a motion to dismiss based on a violation of his right to a speedy trial. (O.R. 236-37). That same day he also filed a motion to appoint a private investigator to find witnesses (O.R. 238-39), and an expert witness to examine the victim to determine whether she was mentally disabled (O.R. 240).

- On September 22, 2011, the trial court denied Petitioner's motion to dismiss and his motions for a private investigator and an expert witness. On September 27, 2011, Petitioner's jury trial commenced. (O.R. 275-77).

In its September 22, 2011, order denying Petitioner's motion to dismiss, the trial court summarized the sequence of events that transpired after Petitioner's arrest:

> Pursuant to *Henager v. State*, 716 P.2d 669, "A defendant who is responsible for a delay should not be allowed to claim violation of his rights to a speedy trial." . . .
>
> Clearly, and almost singularly, the Defendant is responsible for the delay in this case being presented to a jury for trial. Specifically, the Defendant has used scheming and manipulation to put off the inevitable presentation of this matter to a jury by his frivolous filing with this Court, the Oklahoma Supreme court, the Oklahoma Court of Criminal Appeals and the Federal Courts . . . and by his efforts to remove his legal counsel and the judge

7

> previously assigned to this case. Certainly, this case will not be dismissed (or further postponed) because of the Defendant's obvious obstructionist tactics, nor by his misuse of the Courts. . . .

(O.R. 277).

As described by the trial court and the OCCA, Petitioner caused the majority of the delays in bringing his case to trial. He requested four continuances, resulting in delays totaling more than 15 months. In addition, he twice appeared on the day of trial and announced he wanted to exercise his right to a jury trial, causing additional delays of more than two months.

The only delay attributable to the State was the agreed-to delay from October 6, 2009, until November 30, 2009, for the legitimate purpose of grouping Petitioner's cases and eliminating multiple trips to bring in witnesses for preliminary hearing. The OCCA determined that this delay was valid and in good faith, and should be weighed as neutral. *See Barker*, 407 U.S. at 531.

The third *Barker* factor, assertion of the right to a speedy trial, also weighs against Petitioner. He did not assert the right until September 16, 2011, and by that time, the trial court had granted continuances and reset the trial at least eight times, and more than two years had passed since Petitioner's arrest. On this same date, Petitioner also asked for appointment of an expert witness to examine Ashley Clowdus and for an investigator to search for witnesses. The court agrees with the OCCA that Petitioner deliberately sought to delay the trial, and his speedy trial assertions were insincere. *Webb*, slip op. at 3.

With respect to prejudice, the fourth *Barker* factor, the OCCA found that Petitioner did not show that his defense was impaired. *Webb*, slip op. at 3. "Prejudice, of course, should be assessed in the light of the interests of defendants which the speedy trial right was

designed to protect." *Barker*, 407 U.S. at 532. The Supreme Court has identified three such interests: "(I) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Id*. (footnote omitted). Here, Petitioner has identified no specific prejudice caused by the delay in his trial.

Petitioner complains in his reply to the respondent's response that the delay prevented him from presenting certain witnesses who would have testified that Ashley Clowdus had the freedom to leave or use the phone, and she was not held against her will because of a conspiracy. (Dkt. 16 at 3). Petitioner, however, was acquitted of the kidnaping charge against him. (O.R. 337). He further argues that Anthony Areola, who died before trial, could have testified that Ashley opened her own checking account, asked Petitioner for his address for the checking account, and was in possession of her checks. (Dkt. 16 at 3).

After careful review, the court finds the OCCA's determination of Petitioner's speedy trial claim was consistent with clearly established Supreme Court law. 28 U.S.C. § 2254(d)(1). Therefore, habeas relief is not available for the claim.

To the extent Petitioner claims the state court should have held a speedy trial hearing pursuant to Okla. Stat. tit. 22, § 812.1 and 812.2, the respondent alleges this is a state law issue that is not cognizable in federal habeas corpus. The OCCA found Petitioner was not prejudiced by the trial court's failure to hold a hearing:

> As Appellant was the cause of the majority of the delay, we further find that the trial court's failure to conduct a hearing in accordance with Okla. Stat. tit. 22, § 812.1 and 812.2 did not have a substantial influence on the outcome of the case. *Simpson v. State*, 876 P.2d 690, 702; Okla. Stat. tit. 20, § 3001.1.

*Webb*, slip op. at 3. This court finds the OCCA's determination of this issue was reasonable.

9

Furthermore, a writ of habeas corpus cannot be issued "on the basis of a perceived error of state law 'absent a determination that the state law violation rendered the trial fundamentally unfair.'" *Spears v. Mullin*, 343 F.3d 1215, 1245 (10th Cir. 2003) (quoting *James v. Gibson*, 211 F.3d 543, 545 (10th Cir. 2000)), *cert. denied*, 541 U.S. 909 (2004). Therefore, Ground I of this petition fails.

**Ground II: Sufficiency of the Evidence**

Petitioner alleges in Ground II that the evidence was insufficient to support his conspiracy conviction, because there was no evidence to corroborate the testimony of co-conspirators Salomon Pedraza and Shannon Billey. Petitioner also disputes the OCCA's determination that Ashley Clowdus was not an accomplice or co-conspirator. The respondent maintains the OCCA's determination that the evidence supported Petitioner's conviction was not an unreasonable application of, or contrary to, clearly established federal law, so this habeas claim must fail. The OCCA rejected this ground for relief:

> . . . [W]e find that Ashley Clowdus was neither an accomplice nor a co-conspirator in the charged offense. *Nunley v. State*, 601 P.2d 459, 462-63 (Okla. Crim. App. 1979); Inst. No. 2-22, OUJI-CR(2d) (Supp. 2012). As the testimony of Salomon Pedraza and Shannon Billey was direct in-court testimony of co-conspirators, the independent corroborating evidence standard that applies to accomplice testimony was not applicable to their testimony. *Pink v. State*, 104 P.3d 584, 593-96; *Hackney v. State*, 874 P.2d 810, 813; *Huckaby v. State*, 804 P.2d 447, 451; *Johns v. State*, 742 P.2d 1142, 1146-47. Taking the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that Appellant conspired with Shannon Billey and Salomon Pedraza to commit the felony of passing two or more false or bogus checks in a total sum of $500.00 or more beyond a reasonable doubt. *Eastlick v. State*, 90 P.3d 556, 559; *Spuehler v. State*, 709 P.2d 202, 203-04. This proposition is denied.

*Hicks*, slip op. at 3-4.

"Sufficiency of the evidence can be considered to be a mixed question of law and

fact." *Case v. Mondagon*, 887 F. 2d 1388, 1392 (10th Cir. 1989), *cert. denied*, 494 U.S. 1035 (1990). In federal habeas review of a state court conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).

The Supreme Court repeatedly has emphasized the deference the reviewing court owes to the trier of fact and "the sharply limited nature of constitutional sufficiency review." *Wright v. West*, 505 U.S. 277, 296 (1992) (citing *Jackson*, 443 U.S. at 319). "[A] federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume--even if it does not affirmatively appear in the record--that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Jackson*, 443 U.S. at 326. The court must "accept the jury's resolution of the evidence as long as it is within the bounds of reason." *Grubbs v. Hannigan*, 982 F.2d 1483, 1487 (10th Cir. 1993) (citing *United States v. Edmondson*, 962 F.2d 1535, 1548 (10th Cir. 1992)). "To be sufficient, the evidence supporting the conviction must be substantial; that is, it must do more than raise a mere suspicion of guilt." *Beachum v. Tansy*, 903 F.2d 1321, 1332 (10th Cir.), *cert. denied*, 498 U.S. 904 (1990) (citing *United States v. Troutman*, 814 F.2d 1428, 1455 (10th Cir. 1987)).

> The elements of Conspiracy to Pass Two or More Bogus Checks are:
>
> First, an agreement by two or more persons;
> Second, to commit the crime of passing two or more bogus checks in excess of $500.
> Third, the defendant was a party to the agreement at the time it was made;
> Fourth, an overt act by one or more of the parties performed subsequent to the formation of the agreement.

(O.R. 299); Instruction No. 2-17, OUJI-CR(2d).

The elements of the underlying crime of Passing Two or More Bogus Checks in Excess of $500 are:

> First, obtained title;
> Second, to money, property, or other valuable thing;
> Third, of another;
> Fourth, by means of two or more false checks written for a total amount of more than $500;
> Fifth, in pursuance of a common scheme;
> Sixth, known by the defendant to be false;
> Seventh; with intent to cheat and defraud.

(O.R. 301; Instruction No. 2-19, OUJI-CR(2d)).

Patricia Clowdus testified that her daughter Ashley Clowdus was 32 years old, mentally disabled, naive, and overly-trusting of anyone who appears to be friendly. (Tr. 105-08, 113, 115-16). Before the incident in Bryan County with the bogus checks, Ashley told her mother that a man had opened an account in her name, and it needed to be closed. (Tr. 111). Patricia learned the account was at First Convenience Bank at Walmart, and that the Grapevine, Texas, address on the checks belonged to Petitioner. (Tr. 112-14).

Ashley Clowdus testified that she needed a ride to find her boyfriend, and Petitioner took her to Durant to look for him. (Tr. 137). She brought along her beagle named Buster. (Tr. 139-40). Ashley and Petitioner stayed with Petitioner's cousin Shanon Billey and Billey's boyfriend Salomon Pedroza. (Tr. 137-39). Petitioner took Ashley to open a checking account at a Walmart bank. (Tr. 138). Petitioner, Ashley, Pedraza, and sometimes Billey went to stores, where Ashley signed checks from her account that were filled out by someone else. (Tr. 138-39, 209). After two days, Ashley wanted to return home, but Petitioner said he had more things to do. (Tr. 139).

12

Shannon Billey testified that Petitioner, her cousin, brought Ashley and her dog to Billey's house on the weekend of May 15-17, 2009. (Tr. 150-51). They drove to the Travel Plaza in Choctaw, Oklahoma. (Tr. 151-52). Ashley and Pedraza went into the store, while Petitioner and Billey stayed outside. (Tr. 152). After Ashley and Pedraza were detained or arrested at the store, Billey and Petitioner left. (Tr. 153). Ashley had previously signed a check at Billey's house for food from the Schwan's man. (Tr. 154-55). Ashley said she had money in her account, and her parents would take care of it. (Tr. 161). Petitioner said that Billey could get any food she wanted, and he and Ashley would split it with her and Pedraza. (Tr. 154).

Salomon Pedraza testified that he, Petitioner, Ashley, and Billey went to the Choctaw Travel Plaza in Durant on three occasions. (Tr. 166). They also went to Lowe's and Family Dollar. (Tr. 166). Cigarettes were purchased at these stores, paid for with a check filled in by the clerk and signed by Ashley. (Tr. 166-68). Petitioner said he had been in trouble with the Travel Plaza earlier, so he told Pedraza to go in there with Ashley to keep her calm. (Tr. 168). Ten cartons of cigarettes were purchased on each trip, and Petitioner subsequently sold them for half the purchase price. (Tr. 168-69). All four of the group went to Family Dollar Store, where a phone and a phone card was purchased. (Tr. 169-71). Petitioner, Ashley, and Pedraza also went to Lowe's. (Tr. 169-70). Petitioner later admitted to Pedraza that he had threatened Ashley's dog. (Tr. 174-76).

Melissa Jefferson, a bookkeeper for the Choctaw Travel Plaza, testified that on May 17, 2009, a cashier alerted her that some people who previously had written hot checks had returned, and Jefferson saw Ashley and Pedraza present another bogus check. (Tr. 179-82).

Chris Straub, a loss prevention employee at Lowe's in Durant, testified that in May

13

2009, a D.A. investigator asked him to assist in an investigation by reviewing cameras on certain dates to try to locate Petitioner and Ashley. (Tr. 209-10). Straub reviewed the surveillance footage for May 16, 2009, and located Petitioner, Ashley, and a third person entering the store, filling their basket, checking out at a register, leaving the store, and going to a dark pickup truck. (Tr. 209, 219-21). Petitioner is seen writing a check at the register. (Tr. 217-18, 224).

David Cathey, an investigator for the Durant District Attorney's Office testified that he worked in the bogus check program. (Tr. 226). He subpoenaed bank records concerning the account on which the checks were written at the Choctaw Travel Plaza. (Tr. 227). The account was in the name of Ashley Clowdus. (Tr. 227). He identified three checks written in Durant to the Family Dollar, Lowe's and Schwan's, all on the bank account at First Convenience Bank. (Tr. 228). Several also were written at the Choctaw Travel Plaza. (Tr. 228). The address on the bank account was the residence of Petitioner in Grapevine, Texas. (Tr. 229). There were not sufficient funds for any of the checks. (Tr. 232).

Cathey interviewed Petitioner who said he knew Ashley and felt sorry for her, because her mother would not allow her to have any money or a bank account. (Tr. 230-31). Therefore, Petitioner allowed Ashley to use his address to open the bank account. (Tr. 231). Petitioner denied bringing Ashley to Durant, and claimed he did not know how she got there. (Tr. 231).

Renee Thilman, Vice President of First Convenience Bank, testified that the checking account in Ashley's name was opened with one dollar on May 7, 2009. (Tr. 201-02). No deposits were made to the account. (Tr. 203). The total amount of the checks written on the account exceeded $500. (Tr. 201-04).

14

After careful review, the court finds the evidence was sufficient under the standard of *Jackson v. Virginia*. Furthermore, as discussed below, the court finds Petitioner's claim regarding corroboration of testimony by accomplices/co-conspirators is meritless.

In general, Oklahoma law requires corroboration of accomplice testimony. Okla. Stat. tit. 22, § 742 (2011). Petitioner, however, has not identified a Supreme Court decision establishing a constitutional requirement that the testimony of an accomplice-witness be corroborated, and the Tenth Circuit Court of Appeals has held there is no such requirement. *Cummings v. Sirmons*, 506 F.3d 1211, 1237 (10th Cir. 2007), *cert. denied*, 554 U.S. 907 (2008); *Foster v. Ward*, 182 F.3d 1177, 1193 (10th Cir. 1999), *cert. denied*, 529 U.S. 1027 (2000). *See also Harrington v. Nix*, 983 F.2d 872, 874 (8th Cir. 1993) ("[S]tate laws requiring corroboration do not implicate constitutional concerns that can be addressed on habeas review."). Moreover, even under state law, co-conspirator testimony implicating a defendant in a conspiracy is not subject to the state statutory corroboration requirement for the testimony of accomplices. *Pink v. State*, 104 P.3d 584, 594-96 (Okla. Crim. App. 2004). Because Petitioner was charged and convicted of conspiracy to commit a felony, the testimony of Pedraza and Billey, as co-conspirators, was not subject to the corroboration requirement of Okla. Stat. tit. 22, § 742 (2011).

Despite there being no state law requirement of corroboration in Petitioner's case, the trial court issued instructions on the use of accomplice testimony, setting forth the rules and definitions relating to consideration of accomplice testimony. (O.R. 22-29). Although the court should have instructed the jury to apply the corroboration requirement to the testimony of Petitioner's co-conspirators, the issued instructions actually increased the State's burden by requiring corroboration. Therefore, the error did not prejudice Petitioner. *See Floyd v.*

15

*State*, 829 P.2d 981, 983-94 (Okla. Crim. App. 1992) (holding that where instruction error increases the State's burden and benefits the defendant, no relief is warranted).

Under the instructions, the jury obviously recognized the strong corroborating evidence that connected Petitioner with the commission of the offense. In particular, the testimony of numerous witnesses, without considering the testimony of Pedraza or Billey, showed the bogus checks bore Petitioner's address in Grapevine, Texas. (Tr. 114, 229, 230-31; State's Ex. 3-4).

As discussed above, federal habeas relief is only available to Petitioner if the OCCA's decision "was contrary to, or an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). "[A] jury may convict based on the uncorroborated testimony of a co-conspirator . . . so long as the testimony is not incredible on its face and is otherwise capable of establishing guilt beyond a reasonable doubt." *United States v. Torres*, 53 F.3d 1129, 1140 (10th Cir. 1995) (citations omitted). Because federal law does not require independent corroboration of testimony by co-conspirators, the OCCA's rejection of this claim of insufficient evidence was not inconsistent with clearly established federal law. Ground II of the petition also fails.

**Certificate of Appealability**

The court further finds Petitioner has failed to make a "substantial showing of the denial of a constitutional right," as required by 28 U.S.C. § 2253(c)(2). In addition, he has not shown "at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether [this] court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Therefore, a certificate of appealability cannot be issued.

**ACCORDINGLY**, Petitioner's petition for a writ of habeas corpus is DENIED, and he is denied a certificate of appealability.

**IT IS SO ORDERED** this 15th day of April 2016.

_____
James H. Payne
United States District Judge
Eastern District of Oklahoma